UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| IN RE: | C/A No. 04-04000-W |
|---|---|
| Ellen Bratton Hill, | ORDER |
| Debtor. | Chapter 13 |

THIS MATTER is before the Court upon a Chapter 13 plan filed by Ellen Bratton Hill (Debtor) and Hartford Fire Insurance Company's (Hartford) Objection to Confirmation of Debtor's Plan (Objection). In the Objection, Hartford contends, among other things, that Debtor did not propose her plan in good faith pursuant to 11 U.S.C. § 1325(a)(3). After hearing the parties' arguments, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7052.[1]

**FINDINGS OF FACT**

1.  Debtor's husband, Danny Hill, was a former employee of Hartford who served as a claims manager in Hartford's workmen's compensation division for North Carolina and South Carolina. On November 17, 1998, Hartford terminated Mr. Hill's employment with the company.

2.  Several years prior to Debtor's bankruptcy filing, Hartford filed a Complaint in the United States District Court for the District of South Carolina (the "District Court") against Debtor on November 20, 1998.

3.  Hartford also named Debtor's husband; Recoveries, Inc., a business that Debtor's husband allegedly operated as a conduit for converting Hartford's funds; and Robert Ashley and

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, the Court adopts them as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

Carlos Gibbons, Jr., two shareholders of Recoveries, Inc. as defendants in its Complaint.

4. In the Complaint, Hartford alleged that Debtor, her husband, Robert Ashley and Carlos Gibbons, Jr. participated in an ongoing scheme to wrongfully and willfully convert certain funds belonging to Hartford, commit fraud, and conspire to commit fraud. Hartford also alleged that it was entitled to recover the converted amounts from Debtor pursuant to the equitable remedy of constructive trust.

5. Moreover, Hartford alleged that Debtor, as a fifty-percent (50%) shareholder of Recoveries, Inc., enjoyed the benefits of the alleged fraudulent activities by receiving dividend checks from Recoveries, Inc. Debtor contends that she was not involved with the operations of Recoveries, Inc. and that her husband advised her to take a fifty-percent (50%) equity interest in the company so that he could avoid any perceived conflicts of interests that may arise from maintaining an equity interest in Recoveries, Inc. in his name.

6. In order to assist Debtor and her family with Hartford's lawsuit and the unemployment of Debtor's husband, a friend loaned Debtor's husband fifty thousand dollars ($50,000.00).

7. Debtor and her husband used twenty-five thousand dollars ($25,000.00) to retain defense counsel for the litigation with Hartford and the other twenty-five thousand dollars ($25,000.00) for family living expenses.

8. On April 28, 1999, Debtor's husband died; and at that time, Debtor maintained a home in Fort Mill, South Carolina as her primary residence (Fort Mill Property), and owned a rental property located in Columbia, South Carolina.

9. Following her husband's death, Debtor sold her rental property in Columbia, South Carolina but only netted approximately one hundred twenty-six dollars ($126.00) from the sale.

10. Debtor also attempted to access funds held in her husband's retirement account at

Hartford, but Hartford denied Debtor access to the retirement funds.

11. On April 28, 2000, Debtor entered a settlement agreement with Hartford for one hundred thousand dollars ($100,000.00).

12. In section seven of the settlement agreement, Hartford agreed and understood that by entering the settlement agreement, Debtor did not admit any liability with respect to the allegations that Hartford asserted against Debtor in its Complaint. Additionally, Hartford recognized that funding of the settlement agreement was not to be construed as an admission of liability on the part of Debtor individually or as personal representative of her deceased husband's estate.

13. According to section four of the settlement agreement, Debtor was to pay Hartford the settlement amount in a lump sum "no later than five days after the closing of the sale" of the Fort Mill Property.

14. To facilitate that sale, on May 20, 2000, Hartford released a lis pendens encumbering the Fort Mill Property.

15. Debtor testified that she planned to fund the settlement with proceeds arising from the sale of the Fort Mill Property because she believed that a "Credit Life Policy" would pay the remaining mortgage balance owed.[2]

16. Debtor sold the Fort Mill Property on March 30, 2001, but received no proceeds from the sale.

17. Debtor testified that she received no proceeds from the sale of her home because the "Credit Life Policy" did not provide her with sufficient funds to repay the remaining mortgage balance on the home.

---

[2] Debtor did not supplement her testimony by providing any documentary evidence of the "Credit Life Policy" or the settlement statement provided at the closing for the sale of her Fort Mill Property.

18. Following the sale of both her Fort Mill Property and rental property, Debtor moved into her mother's home and resided there for a period of time.

19. After failing to generate sufficient proceeds to fund her settlement agreement with Hartford, Debtor filed a Motion to void the agreement. On September 23, 2003, the District Court declined to void the settlement agreement and entered a judgment in favor of Hartford. The District Court ruled that Debtor breached the terms of her settlement with Hartford and determined that Debtor's settlement with Hartford was not void because Debtor mistakenly believed that a "Credit Life Policy" would pay her remaining mortgage balance on the Fort Mill Property.

20. Debtor is now a teacher employed by the Anderson County School District and currently resides in a house located in Honea Path, South Carolina. Debtor's current home required substantial costly renovations.

21. Debtor procured financing to renovate the home in Honea Path; however, Debtor went into arrears on the debt because she was obligated to pay for unexpected additional renovations as well as her son's college expenses.

22. On April 5, 2004, Debtor filed for Chapter 13 bankruptcy relief. She testified that her primary reason for filing bankruptcy was to cure her mortgage arrearage and avoid a foreclosure of the Honea Path home.

23. On May 5, 2004, Debtor filed a Chapter 13 plan in which she proposed to pay unsecured creditors a one-percent (1%) dividend on their allowed claims. During the hearing on Hartford's Objection, Debtor, upon request of the Chapter 13 Trustee, agreed to amend her proposed plan to specify a fifty-three (53) month payment period and, as a result, increase the percentage or

dividends paid to creditors.[3]

24. After receiving notice of the proposed Chapter 13 plan that Debtor filed on May 5, 2004, Hartford filed its Objection to the plan and asserts, among other things, that the plan has not been proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3). Debtor's agreement to amend her plan does not resolve Hartford's objection.

## CONCLUSIONS OF LAW

11 U.S.C. § 1325(a)(3) provides that "the court shall confirm a plan if – the plan has been proposed in good faith and not by any means forbidden by law." The debtor has the burden of proving, by a preponderance of the evidence, that a plan is proposed in good faith. In re Geiger, C/A No. 03-03550-W, slip op. at 4 (Bankr. D.S.C. June 20, 2003)(citing In re Thomas, 118 B.R. 421, 423 (Bankr. D.S.C. 1990) and In re Fincher, C/A No. 00-02763-B, slip op. at 5 (Bankr. D.S.C. Mar. 30, 2001)); In re Marett, No. 96-75003-W, 1996 WL 33340790, at *7 (Bankr. D.S.C. Nov. 13, 1996). Although the Bankruptcy Code does not specifically define good faith and courts have broad discretion in making a good faith determination, the Fourth Circuit set forth a totality-of-the-circumstances test for determining whether a Chapter 13 plan has been proposed in good faith. Solomon v. Cosby (In re Solomon), 67 F.3d 1128, 1134 (4th Cir. 1995)(citing In re Neufeld v. Freeman, 794 F.2d 149 (4th Cir. 1986)).

The totality-of-the-circumstances test examines factors such as (1) the percentage of proposed repayment to creditors, (2) the debtor's financial situation, (3) the period of time over which creditors will be paid, (4) the debtor's employment history and prospects, (5) the nature and amount of unsecured claims, (6) the debtor's past bankruptcy filings, (7) the debtor's honesty in representing the facts of the case, (8) the nature of the debtor's pre-petition conduct

---

[3] Debtor shall provide an amended plan and notice it to interested parties as required by the Bankruptcy Code.

5

that gave rise to the case, (9) whether the debts would be dischargeable in a Chapter 7 proceeding, and (10) any other unusual or exceptional problems the debtor faces. Solomon, 67 F.3d at 1134. Furthermore, this Court is mindful that it must examine the totality of the circumstances on a case-by-case basis, Deans v. O'Donnell, 692 F.2d 972 (4th Cir. 1982), and that the good faith inquiry is "intended to prevent abuse of the provisions, purpose, or spirit of Chapter 13." Id.; In re Geiger, C/A No. 03-03550-W, slip op. at 5. Therefore, in light of the guidelines prescribed by the Fourth Circuit, this Court shall examine the relevant factors attendant in Debtor's case to determine whether she has proposed her Chapter 13 plan in good faith.

Hartford contends the following specific factors indicate that Debtor filed her Chapter 13 plan in bad faith: (1) Debtor's offer to pay a only a one-percent (1%) dividend to unsecured creditors, (2) the period of time over which creditors will be paid under Debtor's plan, (3) the nature and amount of Hartford's claim, (4) Debtor's overall pre-petition conduct and whether such conduct would give rise to a non-dischargeable obligation had Debtor filed a Chapter 7 case, and (5) Debtor's lack of honesty. In light of Hartford's Objection and the grounds provided, the Court shall address the factors Hartford has raised in summary fashion.

Although Debtor proposes to pay unsecured creditors one percent (1%) of their allowed claims, such a provision alone does not indicate that Debtor filed her plan without good faith. Deans, 692 F.2d at 972 (noting that failing to provide a substantial repayment is evidence of a debtor's attempt to manipulate Chapter 13 but recognizing that substantiality of proposed repayment is but one factor to consider and that a court must make its determination based on all militating factors). There is no *per se* rule that substantial repayment to unsecured creditors is necessary in order to prove good faith. In re Stanley, 296 B.R. 402, 407 (Bankr. E.D. Va. 2002)

("Section 1325 [of the Bankruptcy Code] has no requirement that unsecured creditors must be paid a meaningful sum.") (citing Deans, 692 F.2d at 972, and other cases).

During the hearing on Hartford's Objection to Debtor's plan and after examining Debtor's budget, the Chapter 13 Trustee advised the Court that she does not believe that Debtor has other significant undisclosed disposable income or income potential nor can she afford to provide a greater dividend to unsecured creditors. The Chapter 13 Trustee found the plan acceptable upon the condition that Debtor amend her plan in order to extend the plan's payment period to 53 months and to include all additional income earned from any special educational programs. Thus, relying on the Chapter 13 Trustee's analysis, the plan appears acceptable from an income perspective and equity perspective. It also appears from a review of Debtor's training and skills that she is suitably employed as a teacher. Therefore, in light of this review, the Court finds that the percentage of payment to creditors, Debtor's financial situation, the period of time over which Creditors will be paid, and the Debtor's employment history and prospects are factors that weigh in Debtor's favor and do not appear to indicate a lack of good faith.[4] Additionally, there is no indication that Debtor has previously filed for bankruptcy relief.

Hartford also argues that the nature and amount of its claim against Debtor indicates Debtor's lack of good faith because its judgment against Debtor represents the largest unsecured claim against Debtor, as approximately ninety-five percent (95%) of Debtor's total unsecured indebtedness, and therefore Debtor's bankruptcy is filed primarily to thwart its efforts to collect a potentially nondischargeable claim. See In re Thomas, 118 B.R. at 423; In re Fincher, C/A No. 00-02763-B, slip op. (Bankr. D.S.C. March 30, 2001).

Despite the substantial size of Hartford's unsecured judgment, Debtor stated that the

---

[4] The Court notes that the Chapter 13 Trustee expresses no opinion on the ultimate issue of Hartford's lack of good faith objection.

primary reason that she filed her Chapter 13 case was because she had fallen behind on payments to her mortgage creditor and wanted to avoid foreclosure on her home. Homecomings Financial filed a secured claim on May 17, 2004 that indicated a mortgage arrearage of $10,870.21. Debtor's schedules also demonstrate other unsecured debt consisting of approximately four thousand two hundred sixty-nine dollars ($4,269) in consumer credit and various expenses and a judgment lien for fifty thousand dollars ($50,000) arising from the previously referenced loan from a family friend. Therefore, while Hartford stands as the largest single creditor, thwarting that debt does not appear to be the primary reason for the filing.

The next two factors that Hartford raises are Debtor's overall pre-petition conduct and Debtor's lack of honesty. Hartford contends that Debtor participated in an ongoing scheme to defraud Hartford and convert its funds. In In re Geiger, C/A No. 03-03550-W, slip op. (Bankr. D.S.C. June 20, 2003), the Court found that the debtors in that case intentionally committed overt acts that made certain debts non-dischargeable pursuant to 11 U.S.C. § 523(a)(4); therefore, the Court found that debtors' pre-petition conduct was a factor indicating debtors' lack of good faith. First, the Court notes that in this case, unlike Geiger, Debtor properly listed Hartford as a creditor on her schedules. Next, according to the settlement agreement, Debtor never admitted any liability or confessed judgment to the allegations asserted in the complaint filed by Hartford.[5] Moreover, there is not sufficient evidence before the Court at this time to conclude that Debtor actively conspired and participated in the alleged scheme to convert Hartford's funds, that Debtor was a knowing and willing beneficiary of the alleged fraudulent acts, or that Debtor would have been denied a discharge of her obligations under her settlement agreement

---

[5]    Section seven of Debtor's settlement agreement with Hartford states "that by entering this agreement, [Debtor] does not in any way admit, but specifically denies committing any act or failing to act in violation of any law, statute or regulation."

with Hartford had she filed for Chapter 7 bankruptcy relief. Finally, the timing of entry into the settlement agreement, the release of the lis pendens and the sale of the Fort Mill Property, and the bankruptcy filing is a factor that weighs in Debtor's favor. Debtor and Hartford entered the settlement agreement in April of 2000 and Hartford released its lis pendens in May of 2000. However, the closing did not occur until approximately one (1) year later and Debtor did not file her bankruptcy case until 2004. Accordingly, the Court is not convinced that Debtor intended to avoid paying the amount owed pursuant to her settlement agreement with Hartford or that she contemplated or planned to file bankruptcy at the time she entered into the settlement agreement with Hartford and obtained the release of lis pendens. Therefore, in light of the evidence presently before the Court, Debtor's overall pre-petition conduct does not indicate a lack of good faith on Debtor's part.

Hartford also questions Debtor's candor with this Court because Debtor did not provide sufficient documentary evidence demonstrating the existence of the "Credit Life Policy" that she believed would provide sufficient proceeds to pay the remaining mortgage obligation on the Fort Mill home upon its sale. Furthermore, Hartford contends that Debtor's attempt to be relieved from her obligations under her settlement agreement is also indicative of Debtor's lack of candor. Although the Court finds Debtor's failure to provide certain documentary evidence that would be helpful to corroborate her testimony disturbing, the overall circumstances of this case do not sufficiently demonstrate that Debtor has acted in bad faith or pursued a course of conduct to deceive the Court or prejudice creditors.

The Court has fully considered the remaining factors of the totality-of-the-circumstances test recognized in <u>Solomon</u>, and those factors collectively indicate that Debtor has met her burden and shown that she filed her Chapter 13 plan in good faith.

9

Therefore, Hartford's objection on the grounds addressed herein pursuant to 11 U.S.C. § 1325(a)(3) is denied. The remaining issues raised in Hartford's Objection shall be heard at a continued hearing on September 14, 2004 at 10:00 a.m. in Spartanburg, South Carolina.

**AND IT IS SO ORDERED.**

                                                                    */s/ John E. Waites*
                                                             UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
September 1, 2004